**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JEAN GAULDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07-CV-1637 ERW |
| | ) | |
| CITY OF DESLOGE, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Jean Gaulden ("Plaintiff") and respectfully requests this Honorable Court to deny Defendant City of Desloge, Missouri, Defendant Brandon Scherffius, Defendant Nathan Bentley and Defendant Gary Gerstenschlager's[1] (collectively the "Defendants") Motion for Summary Judgment and submits her Statement of Material Facts in Which a Genuine Issue Exists and Plaintiff's Additional Undisputed Material Facts (previously submitted, supplemented herewith and hereinafter referred to as "Material Fact No. __ ") and submits the following Memorandum in Opposition:

---

[1] Plaintiff filed separate motions voluntarily dismissing all claims against Defendant St. Francois County, Missouri and Defendant John Doe in Plaintiff's First Amended Complaint.

**<u>TABLE OF CONTENTS</u>**

I.    TABLE OF AUTHORITIES.............................................................................................3

II.    INTRODUCTION....................................................................................................6

III.   FACTS......................................................................................................................7

IV.   SUMMARY JUDGMENT STANDARD....................................................................12

V.    ARGUMENT..........................................................................................................14

        A.    Plaintiff has presented a *prima facie* case of excessive force against Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager in that Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager struck and kicked Plaintiff at the Desloge Police Department.............................................................................................14

        B.    Plaintiff has presented a *prima facie* case of municipal liability against Defendant Desloge in that Defendant Desloge failed to properly train, supervise, control and discipline Defendant Scherffius and Defendant Bentley...................................................................................................19

                1.    Plaintiff has presented a *prima facie* case of municipal liability against Defendant Desloge for failure to properly train its police officers.................................................................................19

                2.    Plaintiff has presented a *prima facie* case of municipal liability against Defendant Desloge for failure to properly supervise, discipline and control its police officers.......................................24

        C.    Plaintiff has presented a *prima facie* case of illegal seizure of Plaintiff's dog by Defendant Scherffius..................................................25

        D.    Plaintiff has presented a *prima facie* case of state law claims of assault and battery against Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager..........................................................................28

VI.   CONCLUSION.......................................................................................................30

## I.       TABLE OF AUTHORITIES

**Cases**

Agee v. Hickman, 490 F.2d 210 (8th Cir.1974)...........................................................................16, 18

Altman v. City of High Point, N.C., 330 F.3d 194 (4th Cir. 2003)......................................................25

Ambrose v. Young, 474 F.3d 1070 (8th Cir. 2007)...........................................................................23

Anderson v. Creighton, 483 U.S. 635 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)...............................27

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)....................................................................13

Andrews v. City of West Branch, Iowa, 454 F.3d 914 (8th Cir. 2006).....................................25-26, 27

Andrews v. Fowler, 98 F.3d 1069 (8th Cir. 1996)............................................................................20

Bauer v. Norris, 713 F.2d 408 (8th Cir. 1983)................................................................................16

Bd. of the County Comm'rs v. Brown, 520 U.S. 397 (1997)............................................................20

Bell v. Wolfish, 441 U.S. 520 (1979)...............................................................................................15

Blue v. Harrah's North Kansas City, 170 S.W.3d 466 (Mo. App. 2005)..........................................29

Brockinton v. City of Sherwood, 503 F.3d 667 (8th Cir. 2007).........................................................13

Brown v. Muhlenberg Twp., 269 F.3d 205 (3rd Cir. 2001)................................................................26

California v. Hodari D., 499 U.S. 621 (1991).............................................................................14-15

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)................................................................................12

City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268 (8th Cir. 1988)...........13

City of Canton v. Harris, 4489 U.S. 378, 109 S.Ct 1197, 103 L.Ed.2d 412 (1989).................19-20

Crumley v. City of St. Paul, Minn., 324 F.3d 1003 (8th Cir. 2003)..................................................17

Dawkins v. Graham, 50 F.3d 532 (8th Cir. 1995)...........................................................................17

Deorle v. Rutherford, 272 F.3d. 1272 (9th Cir. 2001).....................................................................15

Ewolski v. City of Brunswick, 287 F.3d. 492 (6th Cir. 2002).........................................................15

Fakorzki v. Dillards, Inc., 252 F.Supp.2d 819 (S.D.Iowa Mar. 11, 2003)............................................21

Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).....................................23

Feemster v. Dehntjer, 661 F.2d 87 (8th Cir. 1981)..................................................................16, 18

Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)..........................................26

Foster v. Armontrout, 729 F.2d 583 (8th Cir. 1984)...............................................................28

Fuller v. Vines, 36 F.3d 65 (9th Cir. 1994)..........................................................................25

Graham v. Conner, 490 U.S. 386 (1989)....................................................................15, 25

Goff v. Bise, 173 F.3d 1068 (8th Cir. 1999)..........................................................................13

Habiger v. City of Fargo, 80 F.3d 289 (8th Cir. 1996)..........................................................13

Hanig v. Lee, 415 F.3d 822 (8th Cir. 2005)..........................................................................17

Hardeman v. Clark, 593 F.Supp. 1285 (D.D.C. 1984)..........................................................22

Harris v. City of Pagedale, 821 F.2d 499 (8th Cir. 1987)..........................................................24

Hartnagel  v. Norman, 953 F.2d 394 (8th Cir. 1992)..........................................................12

Henderson v. Munn, 439 F.3d 497 (8th Cir. 2006)..........................................................18

Hunter v. Namanny, 219 F.3d 825 (8th Cir. 2000)..........................................................13

Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264 (8th Cir. 1993)............................................13

Larson By Larson v. Miller, 76 F.3d 1446 (8th Cir. 1996)........................................................20

Lesher v. Reed, 12 F.3d 148 (8th Cir. 1994)..........................................................................25

Liebe v. Norton, 157 F.3d 574 (8th Cir. 1998)..........................................................................24

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)....................................13

Mettler v. Whitledge, 165 F.3d 1197 (8th Cir. 1999)..........................................................13

Monell v. Dept. of Social Servs. Of the City of New York, 436 U.S. 658 (1978)........................19

Parrish v. Luckie, 963 F.2d 201 (8th Cir. 1992)..........................................................................24

Richmond v. City of Brooklyn Center, 490 F.3d 1002 (8th Cir. 2007)...........................................18

Robison v. Solano County, 278 F.3d 1007 (9th Cir. 2002)....................................................................25

Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir. 1992)..................................................................22

San Jose Charter of Hells Angels v. San Jose, 402 F.3d 962 (9th Cir. 2005)......................................27

Saucier v. Katz, 533 U.S. 194 (2001).......................................................................................17-18

State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443 (Mo. 1986)........................................................29

Szabla v. City of Brooklyn Park, 486 F.3d 385 (8th Cir. 2007).....................................................20

Thelma D. v. Bd. of Ed. of City of St. Louis, 934 F.2d 929 (8th Cir. 1991).......................................20

United States v. Harrison, 671 F.2d 1159 (8th Cir. 1982)..........................................................16, 18

United States v. Place, 462 U.S. 696 (1983)...............................................................................25-26

## Statutes

R.S.Mo. § 516.130..........................................................................................................................29

R.S.Mo. § 516.140..........................................................................................................................28

5

## II.    INTRODUCTION

Plaintiff brings this case under 42 U.S.C. § 1983 against City of Desloge, Missouri (hereinafter "Defendant Desloge"), Defendant Brandon Scherffius (hereinafter "Defendant Scherffius"), Defendant Nathan Bentley (hereinafter "Defendant Bentley") and Defendant Gary Gerstenschlager (hereinafter "Defendant Gerstenschlager").

Count I of Plaintiff's First Amended Complaint is against Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager for use of excessive force on Plaintiff.

Count II of Plaintiff's First Amended Complaint is against Defendant Desloge on the basis of municipal liability relating to the constitutional violations against Plaintiff by Defendant Scherffius and Defendant Bentley as alleged in Count I. Plaintiff abandons her claims against Defendant Desloge of municipal liability on the 1st and 3rd alternative theories as stated in Plaintiff's First Amended Complaint; claims of "delegation of authority" and "pattern of trangressions" respectively. Plaintiff maintains her claim against Defendant Desloge in Count II on the basis that Defendant Desloge failed to properly train, supervise, control and discipline Defendant Scherffius and Defendant Bentley.

Count III of Plaintiff's First Amended Complaint is against Defendant Scherffius for an illegal seizure of Plaintiff's dog by Defendant Scherffius in that Defendant Scherffius was objectively unreasonable in shooting Plaintiff's dog.

Count IV has previously been dismissed with prejudice by this Honorable Court.

Count V of Plaintiff's First Amended Complaint is against Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager for state law claims of assault and battery.

Defendants have moved for summary judgment on all counts of Plaintiff's First Amended Complaint.

6

### III.   <u>FACTS</u>

**Plaintiff's Residence**

On September 25, 2004, Defendant Scherffius arrived near Plaintiff's residence and spoke to Jason Adams ("Adams") and Adams' girlfriend, Kathleen. (*See* Material Fact No. 19). Adams told Defendant Scherffius that someone had placed feces in the seat of his truck. (*See* Material Fact No. 20). Defendant Scherffius looked at Adams' truck and saw the feces on the seat. (*See* Material Fact No. 21). Defendant Scherffius examined feces in Plaintiff's yard he thought to be similar to the feces in Adams' truck and proceeded to Plaintiff's residence and encountered Plaintiff at the front door. (*See* Material Fact Nos. 22, 23 and 24). Defendant Scherffius admitted that at the time he confronted Plaintiff in her home, he did not have probable cause to arrest Plaintiff. (*See* Material Fact No. 24).

At the front door of Plaintiff's residence, Defendant Scherffius instructed Plaintiff to come outside and he would explain why he wanted to speak with her, if she came outside. Before the audio goes silent on Plaintiff's Exhibit A attached to her Statement of Material Facts in Which a Genuine Issue Exists and Plaintiff's Additional Undisputed Material Facts, you can hear Plaintiff asking why Defendant Scherffius is at her front door. Defendant Scherffius grabbed Plaintiff's arm and pulled her from her doorway to her front porch. (*See* Material Fact No. 26). Defendant Scherffius then pulled Plaintiff's arm a second time, causing Plaintiff's dogs to come out the front door of Plaintiff's residence. (*See* Material Fact Nos. 27 and 28). Defendants submit affidavits that allege Plaintiff gave a verbal command to her dogs for the dogs to attack Defendant Scherffius and Plaintiff vehemently denies that she gave any verbal commands to her dogs to attack or harm Defendant Scherffius. (*See* Material Fact No. 29).

Defendants assert that Plaintiff's dogs chased and were attacking Defendant Scherffius; whereas Plaintiff asserts the dogs were trotting/jumping next to Defendant Scherffius as he backed away. (*See* Material Fact No. 11). Further and contrary to Defendant Scherffius' assertion that the dogs "were attacking him", Defendant Scherffius admitted in his deposition that the dogs were close enough to bite him, but did not bite him. (*See* Material Fact No. 30). Defendant Scherffius un-holstered his weapon and shot four (4) rounds at Plaintiff's dogs and the dogs were several feet from Defendant Scherffius. (*See* Material Fact No. 12). A close look at Plaintiff's Exhibit A attached to her Statement of Material Facts in Which a Genuine Issue Exists and Plaintiff's Additional Undisputed Material Facts shows that Plaintiff's dogs actually stopped in the middle of Plaintiff's front yard and Defendant Scherffius took steps towards the dogs as he fired his weapon. Defendant Desloge provided Defendant Scherffius with "OC Spray" (commonly referred to as pepper spray or mace), and Defendant Scherffius chose to shoot Plaintiff's dogs instead of spraying them with OC Spray. (*See* Material Fact No. 13.)

After Defendant Scherffius fired four rounds at Plaintiff's dogs, Plaintiff retreated to her front porch in fear and Defendant Scherffius jumped on Plaintiff causing scrapes on Plaintiff's knees. (*See* Material Fact Nos. 15 and 16). Both Defendant Bentley and Defendant Gerstenschlager arrived at Plaintiff's residence after Defendant Scherffius placed Plaintiff under arrest and escorted Plaintiff to Defendant Scherffius' patrol car. (*See* Material Fact No. 30). Plaintiff was then driven to the Desloge Police Department by Defendant Scherffius and Defendant Gerstenschlager left Plaintiff's residence and also went to the Desloge Police Department. (*See* Material Fact Nos. 32 and 33).

8

**Desloge Police Department**

While at the Desloge Police Department, Defendant Scherffius punched Plaintiff in her chest, kicked Plaintiff in her side and hit Plaintiff in the back of her legs with a baton. (*See* Material Fact No. 34). Defendant Bentley kneed Plaintiff in her stomach and hit Plaintiff in the back of her legs with a baton. (*See* Material Fact No. 17). Defendant Gerstenschlager hit Plaintiff in the back of her legs with a baton. (*Id.*). Plaintiff became unconscious and an EMT from the St. Francois County Ambulance District, Robert McFarland, responded and treated Plaintiff at the Desloge Police Department. (*See* Material Fact Nos. 4, 35, 36 and 37).

As only Defendant Scherffius and Defendant Gerstenschlager's depositions have been taken, both of them seem to have selective memory or have chose to adhere to the unwritten "code of silence". Defendant Gerstenschlager states he saw Plaintiff on the floor, but didn't actually witness her "faint" and doesn't recall what officers were near him at that time. (*See* Material Fact No. 38). Defendant Scherffius states that he saw Defendant Gerstenschlager talking to Plaintiff while she was in the holding cell, that Plaintiff fainted and, however, did not remember seeing Plaintiff faint, if the holding cell door was closed and locked, did not remember if Plaintiff was in the holding when she fainted, did not remember if he physically made contact with Plaintiff and lower her to the floor and  did not remember where Defendant Gerstenschlager was when Plaintiff "fainted". (*See* Material Fact No. 39).

Plaintiff was transported to the emergency room at the Mineral Area Regional Medical Center, where she was treated and released. (*See* Material Fact Nos. 3 and 4). Three days after the incident, Plaintiff had severe bruising on the back of both of her legs and her husband took photographs to depict her physical condition. (*See* Material Fact No. 18). Since the incident subject

to this case, Plaintiff suffered mental and emotion injuries and has been treated by medical professionals in the field of psychiatry. (*See* Material Fact No. 42).

**City of Desloge's Policy and Procedures Relating to Training, Supervision and Discipline**

At the time of the incident subject to this case, there existed a Desloge Police Dept. Manual that was adopted by the City of Desloge Board of Alderman. (*See* Material Fact No. 43). Both Defendant Scherffius and Defendant Bentley were given a copy of the Desloge Police Dept. Manual. (*See* Material Fact Nos. 44 and 45). Although the City of Desloge Board of Alderman adopted the Desloge Police Dept. Manual, Chief James Bullock has authority to make rules and policies without the approval of the City of Desloge Board of Alderman. (*See* Material Fact No. 46). Chief James Bullock makes policies and procedures for Desloge police officers to follow. (*See* Material Fact No. 47).

The Desloge Police Department provides police officers a baton when they are hired, if they choose to carry one, and a baton was provided to and carried by Defendant Scherffius and Defendant Bentley. (*See* Material Fact Nos. 49, 50, 51 and 52). Batons are kept in an equipment room at the Desloge Police Department. (*See* Material Fact No. 48). The Desloge Police Dept. Manual provides no written policies or procedures regarding the use of a baton. (*See* Material Fact No. 54). The Desloge Police Department did not provide any training regarding the use of a baton to Defendant Scherffius or Defendant Bentley. (*See* Material Fact No. 53). The Desloge Police Department did, however, provide training on the use of a firearm. (*See* Material Fact No. 93).

The Desloge Police Dept. Manual provides an escalating scale of disciplinary actions as follows: (A) oral reprimand; (B) Written reprimand; (C) Demerits; (D) Suspension without pay; (E) Demotion; (F) Dismissal; and (G) Criminal prosecution. (*See* Material Fact No. 55). From December 15, 2003 to February 9, 2006, Defendant Scherffius received eight (8) separate Written

10

Reprimands/Written Warnings for: inattention to duty, leaving evidence in the trunk of his car, failing to appear in court after being subpoenaed to do so, failing to serve/enforce complaints/ordinance violations, failing to follow a direct order and failing to submit reports in a timely manner. (*See* Material Fact Nos. 56, 59, 62, 65, 67, 69, 71 and 73). The written reprimands/warnings warn of the next step in the disciplinary scale for any further violations. (*See* Material Fact Nos. 57, 60, 70, 72 and 74). In Defendant Scherffius' January 5, 2004 letter of reprimand, he was placed on probation for six months and probation is not listed as a disciplinary action in the Desloge Police Dept. Manual. (*See* Material Fact Nos. 60 and 61). Although Defendant Scherffius was on probation at the time of his April 8, 2004 letter of reprimand, Chief James Bullock only gave Defendant Scherffius another written reprimand because it was Chief James Bullock's "personal choice". (*See* Material Fact No. 63). In relation to the April 8, 2004 letter of reprimand for Defendant Scherffius, Chief James Bullock considered Defendant Scherffius' leaving evidence in the trunk of his patrol a serious violation *if* the case were to go trial. (*See* Material Fact No. 64). Although the January 3, 2005 written reprimand for Defendant Scherffius was for similar actions relating to his April 8, 2004 letter of reprimand, Chief James Bullock only gave Defendant Scherffius another written reprimand because it was Chief James Bullock's own decision. (*See* Material Fact No. 66). Chief James Bullock stated there was no decision in only issuing a written reprimand of Defendant Scherffius and not a more severe disciplinary action for the incident regarding the February 22, 2005 letter of reprimand. (*See* Material Fact No. 68).

From April 12, 2003 to January 3, 2005, Defendant Bentley received eight (8) separate disciplinary actions for: failing to submit reports in a timely manner, lying to Chief James Bullock, inattention to duty, "misinforming" Chief James Bullock, and leaving evidence in the trunk of his car. (*See* Material Fact Nos. 75, 77, 79, 82, 84, 87, 89 and 90). The written reprimands/warnings

11

warn of the next step in the disciplinary scale for any further violations. (*See* Material Fact Nos. 76, 78, 80, 85, 89 and 90). On August 1, 2003 Defendant Bentley was only suspended for two (2) days without pay for lying to Chief James Bullock. (*See* Material Fact No. 82). When Chief James Bullock suspended Defendant Bentley for two days without pay, he did not take into consideration prior written remands issued to Defendant Bentley. (*See* Material Fact No. 83). Despite Defendant Bentley receiving three previous written reprimands for failing to turn in reports, on December 15, 2003 Chief James Bullock only issued another written reprimand instead of taking harsher disciplinary action because it was Chief James Bullock's "personal decision". (*See* Material Fact No. 86). On February 11, 2004 Defendant Bentley was suspended for five (5) days without pay for "misinforming" Chief James Bullock. (*See* Material Fact No. 87). When Chief James Bullock suspended Defendant Bentley for five days without pay, he did not take into consideration prior incidents with Defendant Bentley. (*See* Material Fact No. 88). Although the January 3, 2005 written reprimand for Defendant Bentley was for similar actions relating to his April 8, 2004 letter of reprimand, Chief James Bullock only gave Defendant Bentley another written reprimand because it was Chief James Bullock's "personal decision". (*See* Material Fact No. 66).

## IV.     SUMMARY JUDGMENT STANDARD

Defendants failed to state the Standard of Review for their instant motion. Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue of material fact is genuine if it has real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted).

12

The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *See* City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the non-moving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All disputed facts are to be resolved, and all inferences are to be drawn, in favor of the non-moving party. *See* Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993). At the summary judgment stage, the court is not to weigh the evidence and decide the truth of the matter, but rather to only determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249.

As is more fully discussed, *infra*, the Defendants Scherffius, Bentley and Gerstenschlager set forth arguments of qualified immunity. To survive a motion for summary judgment based on qualified immunity, a plaintiff alleging liability pursuant to 42 U.S.C. § 1983 "'must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right.'" Brockinton v. City of Sherwood, 503 F.3d 667, 672 (8th Cir. 2007) (*quoting* Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)). *See also* Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999); Hunter v. Namanny, 219 F.3d 825, 829 (8th Cir. 2000); Goff v. Bise, 173 F.3d 1068, 1072 (8th Cir. 1999).

Based on Plaintiff's statement of material facts in which a genuine issue exists, additional undisputed material facts, the controlling case law and the standard for summary judgment,

Defendants have not discharged the initial burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor. Even if Defendants have discharged their initial burden, Plaintiff has done more than show that there is some doubt as to the facts and the Defendants' Motion for Summary Judgment should be denied.

**V.**     <u>**ARGUMENT**</u>

**A.**     **Plaintiff has presented a *prima facie* case of excessive force against Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager in that Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager struck and kicked Plaintiff at the Desloge Police Department.**

**(COUNT I OF PLAINTIFF'S FIRST AMENDED COMPLAINT)**

Defendants Scherffius, Bentley and Gerstenschlager move this Court to grant their motion for summary judgment on Plaintiff's claims of excessive force on the basis that Defendants did not use force on Plaintiff at all, with the exception of Defendant Scherffius briefly struggling with Plaintiff on her front porch. (*See* Def. Memo. in Support, pp. 9-10).

First, Plaintiff asserts her claim of excessive force against the Defendants on the events that occurred at the Desloge Police Department. Plaintiff maintains her position that Defendant Scherffius' actions in arresting Plaintiff on her front porch were excessive, but caused minor physical injury to Plaintiff. Plaintiff specifically reserves the right, subject to rulings from the court, to inform the jury that Defendant Scherffius' jumping on Plaintiff caused Plaintiff pain and scrapes on her knees.

At that moment of the events at the Desloge Police Department, Plaintiff, in control of Defendant Scherffius and in the process of being booked after being handcuffed at her residence and transported to the Desloge Police Department by Defendant Scherffius, was surely "seized". When an officer has placed a person in handcuffs the person in the handcuffs can have no

14

reasonable belief he or she is "free to leave." California v. Hodari D., 499 U.S. 621, 627-28 (1991).

In Graham v. Conner, the Supreme Court concluded that the claim of a person who has been subjected to excessive and unreasonable force in the course of arrest shall have that claim analyzed under the Fourth Amendment. Graham v. Conner, 490 U.S. 386 (1989). The court instructed that the court is to balance the nature and quality of the intrusion on the suspect's Fourth Amendment interests against the countervailing government interests. Id. The force must be objectively reasonable under the particular circumstances. Id. The court is to give careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers, and whether he is actively resisting arrest or attempting to evade arrest by flight. Id. The reasonableness must be judged from the perspective of a reasonable officer on the scene, not on hindsight. Id. The test is objective. Id. The test is not capable of precise definition or mechanical application. Bell v. Wolfish, 441 U.S. 520, 559 (1979). The "split second decision" analysis, which commonly excuses police decisions made in dangerous and fast moving circumstances would seem inapplicable here. Graham, 490 U.S. at 396; Deorle v. Rutherford, 272 F.3d. 1272, 1283 (9th Cir. 2001); *see also* Ewolski v. City of Brunswick, 287 F.3d. 492 (6th Cir. 2002).

There can be no government interest in punching, kicking and hitting Plaintiff with a baton in the process of booking her. The entire events on September 25, 2004 were initiated and instigated by Defendant Scherffius. He confronted Plaintiff at her front door without probable cause to arrest Plaintiff. Defendant Scherffius would not speak to her at first, but insisted

Plaintiff exit her home, <u>and then</u> he would tell Plaintiff why he was there. The alleged destruction of property offense of feces in Jason Adams' truck could hardly be considered "serious".

At the Desloge Police Department Defendant Scherffius and Defendant Gerstenschlager deny punching, kicking or striking Plaintiff with a baton, however, their recollection of the events are sketchy at best, and in a few ways, contradicting. Neither have the Defendants alleged, nor have they presented any evidence, that Plaintiff resisted in any way at the Desloge Police Department. Plaintiffs particularly draw the court's attention to <u>Bauer v. Norris</u>, where a Plaintiff did not physically resist arrest or physically threaten the officer, and the court held that any force used was excessive. <u>Bauer v. Norris</u>, 713 F.2d 408 (8th Cir. 1983).

The Eighth Circuit in <u>Bauer</u> stated: "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Id</u> at 412.

Defendants Scherffius, Bentley and Gerstenschlager fail the <u>Bauer</u> test. They acted maliciously and sadistically for the very purpose of causing harm. Not only did the Defendants cause Plaintiff great pain, a visit to a hospital emergency room, severe bruising on the back of her legs, but they also scarred her mental health causing a fear of the police that placed Plaintiff in a position to not want to leave her home.

In <u>Bauer</u> at 412 the court outlined this circuit's precedent in cases of this nature:

Force can only be used to overcome physical resistance or threatened force. <u>Agee v. Hickman</u>, 490 F.2d 210, 212 (8th Cir.1974). <i>See also</i> <u>Feemster v. Dehntjer</u>, 661 F.2d 87, 89 (8th Cir. 1981)(<i>force may not be used against a suspect who quietly submits</i>); <i>cf.</i> <u>United States v.</u>

<u>Harrison</u>, 671 F.2d 1159 (8th Cir. 1982)(*lack of provocation or need to use force would make any use of force excessive*). In the Eighth Circuit on these facts there was simply no excuse for Defendants Scherffius, Bentley and Gerstenschlager to use any force at all on Plaintiff.

An Eighth Circuit Plaintiff asserting an excessive force claim must suffer actual injuries. *See* <u>Dawkins v. Graham</u>, 50 F.3d 532, 535 (8th Cir. 1995)(*various Plaintiffs suffered bruises, lacerations, a trip to the hospital, elevated blood pressure and post-traumatic stress disorder and the court found those conditions constituted "actual injuries".*) *See also* <u>Hanig v. Lee</u>, 415 F.3d 822, 824 (8th Cir. 2005)(*confirming actual injury requirement*).

Defendants Ex. 1, the Mineral Area Regional Medical Center Records, shows that Plaintiff suffered from abdominal pain and multiple abrasions. (*See* Material Fact No. 4). Plaintiff also suffered mental and emotional injuries that required treatment by medical professionals. (*See* Material Fact No. 42).

In <u>Crumley v. City of St. Paul, Minn.</u>, the court held that:

"Additionally, while this court has stated "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury," <u>Hunter v. Namanny</u>, 219 F.3d 825, 831 (8th Cir. 2000), a de minimus use of force or injury is insufficient to support a finding of a constitutional violation. *Id.*; <u>Curd v. City Court</u>, 141 F.3d 839, 841 (8th Cir. 1998)(reasoning "[e]ven if seizing an [arrestee's] arm and turning her body was unnecessary to effect the arrest, we cannot conclude that this limited amount of force was objectively unreasonable," especially since **there was no allegation or evidence of injury or physical pain**).(*emphasis added*).

<u>Crumley v. City of St. Paul, Minn.</u>, 324 F.3d 1003, 1007 (8th Cir. 2003).

Plaintiff suggests that this quote from <u>Crumley</u> equates "pain" with "actual injuries". Notwithstanding Plaintiff's psychiatric injuries, Plaintiff's allegation of pain and the severe bruising illustrated in the photos properly supports her Fourth Amendment claim.

Even if Plaintiff has made out a constitutional claim, Plaintiff must still successfully navigate the shoals of qualified immunity. In Saucier v. Katz, the court confirmed that qualified immunity can be available to an officer in an excessive force case, and that qualified immunity is an entitlement not to stand trial. Saucier v. Katz, 533 U.S. 194 (2001). Further, the inquiry under qualified immunity is not identical to the merits of the excessive force claim. Id. The question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted". Id at 202. Defendants Scherffius, Bentley and Gerstenschlager will prevail if they mistakenly but reasonably concluded that the law permitted a particular amount of force in a given circumstance. Id at 215. The doctrine protects officers from the hazy border between excessive and acceptable force. Id at 206. "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006).

To determine whether an officer is entitled to qualified immunity, we ask first whether the officer's conduct violated a constitutional right, and second whether that right was clearly established at the time of the deprivation "in light of the specific context of the case." Saucier, 533 U.S. at 194; see also Richmond v. City of Brooklyn Center, 490 F.3d 1002, 1006 (8th Cir. 2007). Plaintiff suggests that the qualified immunity analysis in Plaintiff's case is extremely simple. Bauer and the above cited line of cases disallow any force without provocation. See Agee v. Hickman, 490 F.2d 210, 212 (8th Cir. 1974); Feemster v. Dehntjer, 661 F.2d 87, 89 (8th Cir. 1981); and United States v. Harrison, 671 F.2d 1159 (8th Cir. 1982). There was no provocation in this case whatsoever. The aforementioned cases, all pre-event, support the idea that Defendants

18

Scherffius, Bentley and Gerstenschlager's conduct violated Plaintiff's constitutional right to be free of unreasonable force under these circumstances, and that the right was clearly established. This court should deny qualified immunity to Defendants Scherffius, Bentley and Gerstenschlager on Plaintiff's claims.

For the foregoing reasons, Plaintiff has presented a *prima facie* case of excessive force against Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager. Having presented such evidence, Plaintiff respectfully requests this Honorable Court to deny Defendants Motion for Summary Judgment on Count I of Plaintiff's First Amended Complaint.

> **B.    Plaintiff has presented a *prima facie* case of municipal liability against Defendant Desloge in that Defendant Desloge failed to properly train, supervise, control and discipline Defendant Scherffius and Defendant Bentley.**

> **(COUNT II OF PLAINTIFF'S FIRST AMENDED COMPLAINT)**

As stated in the Introduction, *supra*, Plaintiff abandons her claims against Defendant Desloge of municipal liability on the 1st and 3rd alternative theories as stated in Plaintiff's First Amended Complaint; claims of "delegation of authority" and "pattern of trangressions" respectively. Defendant Desloge moves this Court to grant its motion for summary judgment on Plaintiff's claim of municipal liability on the basis that Defendants Scherffius and Bentley's training and supervision by Desloge were adequate and not the moving force behind any alleged violation. (*See* Def. Memo. in Support, pp. 3-4).

> **1.    Plaintiff has presented a *prima facie* case of municipal liability against Defendant Desloge for failure to properly train its police officers.**

In order to prevail on a claim for municipal liability under 42 U.S.C. 1983, the plaintiff may proceed under the standards set forth by the Supreme Court in <u>Monell v. Department of Social Services</u>, which establishes municipal liability based on policy statements, ordinances,

regulations or decisions formally adopted and promulgated by government final policy makers or on custom or usage. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). The plaintiff may also or alternatively proceed under the standards the Supreme Court set forth in City of Canton v. Harris, which establishes municipal liability where a municipality's failure to train its police officers evidences "deliberate indifference" to the rights of citizens with whom its police officers come into contact. City of Canton v. Harris, 489 U.S. 378, 389 (1989).

A municipality may be held liable for deficient policies of training police officers where (1) the municipality's training practices are inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by the municipality; and (3) the alleged deficiency in the municipality's training procedures actually caused the plaintiff's injury. Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)(citing City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct 1197, 1205, 103 L.Ed.2d 412 (1989) and Larson By Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996).

"The Supreme Court has not foreclosed the possibility that a single violation of constitutional rights could trigger municipal liability, where the violation is accompanied by a showing that the municipality had "failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."" Szabla v. City of Brooklyn Park, Minnesota, 486 F.3d 385, 393 (8th Cir. 2007)(quoting Bd. of the County Comm'rs v. Brown, 520 U.S. 397 (1997)). Under this situation, notice of a pattern of unconstitutional behavior does not have to be shown for the municipality to be held liable. Larson, 76 F.3d at 1454; see also Thelma D. v. Bd. of Ed. of City of St. Louis, 934 F.2d 929, 934 (8th Cir. 1991).

First, Defendant Desloge's training on the use of a baton is inadequate as the Desloge Police Dept. Manual provides no written policies or procedures regarding the use of a baton, nor does

Defendant Desloge provide any training to its officers regarding the use of a baton. (*See* Material Fact Nos. 53 and 54). Further, Defendant Desloge provides an officer a baton if the officer chooses to carry one and the batons are kept in an equipment room at the Desloge Police Department. (*See* Material Fact Nos. 48 and 49).

The District Court for the Southern District of Iowa in this 8th Circuit in analyzing a failure to train claim on the use of handcuffs held as follows:

> "For example, in [City of Canton v.] Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the [Supreme] Court noted that because police officers are armed by a municipality and the officers are certain to be required on occasion to use force in apprehending felons, the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights. Id.
> The reasoning of Harris applies with equal force to the case at bar. The City of Coralville gives its officers handcuffs with the expectation that they will use them in arresting suspected criminals when necessary. Just as the officers in Harris were "certain to be required on occasion to use force in apprehending felons," Harris, 489 U.S. at 390, 109 S.Ct. 1197, Coralville police officers have recurring occasions to make arrests and must frequently determine whether to handcuff potential suspects. The Court finds that a failure to train officers in the appropriate use of handcuffs is "so likely to result in a violation of constitutional rights that the need for training is patently obvious." Harris, 489 U.S. at 390, 109 S.Ct. 1197. Therefore, notice to the City is implied in this case. Genuine issues of material fact exist on the adequacy of the City's training."

Fakorzki v. Dillards, Inc., 252 F.Supp.2d 819, 831 (S.D.Iowa Mar. 11, 2003).

The Coralville Police Department's training materials contained only one page pertaining to handcuffing and the Coralville Sergeant stated, "We really don't have a policy on handcuffing." Id at 831-32.

Similar to Fakorzki, the same analysis applies. Defendant Desloge gives its officers batons with the expectation that they will use them in arresting criminals, when necessary. Desloge police officers must frequently determine how and when to use their baton, whether in striking a suspect or

using the baton as a defense from a strike. Defendant Desloge's complete lack of training on the use of batons is inadequate.

Defendant Desloge asserts that Defendants Scherffius and Bentley's training was sufficient because they completed their academy course work and continuing minimum requirements in accordance with Missouri's POST certification requirements. Defendant Desloge offers no evidence that the course work or training in the academy provided adequate training on the use of a baton. Even though Defendants Scherffius and Bentley may have taken a course on batons several years prior to this incident at the academy does not mean that they have received adequate training.

This issue was addressed by the Sixth Circuit in <u>Russo v. City of Cincinnati</u>, which held:

"Similarly, we find the fact that the City offered a seven-hour course entitled "Disturbed-Distress Persons" insufficient in and of itself to shield the City from liability. Just as in City of Canton, where the officers were trained in an area that nominally addressed the needs of the relevant class of persons, but where the content and adequacy of that training was in dispute, we find that the City has not established that there exists no genuine issue of material fact as to the adequacy of the City's training. Although plaintiffs concede that the officers received the amount of training cited by the district court, they dispute that the content of the training was adequate. The City comes forth with no evidence to refute Kirkham's conclusion that the content of the training offered was inadequate. To uphold summary judgment to the City on this issue would, we believe, necessarily rest on the rule that a municipality may shield itself from liability for failure to train its police officers in a given area simply by offering a course nominally covering the subject, regardless of how substandard the content and quality of that training is. We do not believe that this is, or should be, the state of the law."

<u>Russo v. City of Cincinnati</u>, 953 F.2d 1036, 1047 (6th Cir. 1992). The <u>Russo</u> court reversed the grant of summary judgment on plaintiff's claim of failure to train against the city. <u>Id</u> at 1048. A similar analysis should apply in this case and Defendant Desloge should not be able wash their hands of liability because their police officers had a course in the academy on batons.

The District Court for the District of Columbia refused to dismiss the D.C. Police Dept. for allowing police officers to carry blackjacks, a weapon similar to a baton, without providing

adequate training. Hardeman v. Clark, 593 F.Supp. 1285, 1287 (D.D.C. 1984). The foregoing presents genuine issues of material fact on the adequacy of Defendant Desloge's training on the use of batons.

Second, Defendant Desloge was deliberately indifferent to the rights of others in adopting the training policies on the use of a baton and said actions reflects a conscious choice by Defendant Desloge. ""...deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."" Ambrose v. Young, 474 F.3d 1070, 1076 (8th Cir. 2007)(*quoting* Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). In support of this contention, Defendant Desloge also provides its police officers guns and provides them training on the use of guns at Defendant Desloge's firing range. (*See* Material Fact Nos. 92 and 93). Defendant Desloge made a conscious choice to not train its officers on the use of a baton, even though Defendant Desloge provides its officers a baton and expects them to use it in the course of their employment.

Last, the deficiency in Defendant Desloge's training policies on the use of a baton caused Plaintiffs' injuries. Having presented the foregoing, there are genuine issues of material fact as to whether the adequacy of Defendant Desloge's training on the use of a baton caused Plaintiff's injuries. With Defendant Desloge's failure to train, it is reasonably foreseeable that Defendants Scherffius and Bentley would improperly use their batons, which in turn caused Plaintiff's injuries.

For the foregoing reasons, Plaintiff has presented a *prima facie* case of municipal liability against Defendant Desloge based on her claim of failure to train. Having presented such evidence, Plaintiff respectfully requests this Honorable Court to deny Defendant Desloge's Motion for Summary Judgment on Count II of Plaintiff's First Amended Complaint.

2.      **Plaintiff has presented a *prima facie* case of municipal liability against Defendant Desloge for failure to properly supervise, discipline and control its police officers.**

A failure to supervise claim is analyzed in the same fashion as a failure to train claim, under the deliberate indifference standard. Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." Parrish v. Luckie, 963 F.2d 201, 204 (8th Cir. 1992)(*citing* Harris v. City of Pagedale, 821 F.2d 499, 504 (8th Cir. 1987), cert. denied, 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987).

Defendant Desloge's supervision, discipline and control of its police officers are inadequate. As stated in the facts above, Desloge Police Chief James Bullock failed to discipline Defendant Scherffius with nothing more severe than a written letter of reprimand, despite Defendant Scherffius being on probation at one point and having received a previous written reprimand warning of harsher discipline for a subsequent violation. Desloge Police Chief James Bullock acted in a similar manner with Defendant Bentley. Additionally, Chief Bullock admitted he only gave Defendant Bentley a two-day suspension without pay as a result of Defendant Bentley lying to him.

Although the disciplinary actions did not specifically involve an excessive force claim, it did involve an incident of leaving evidence in the trunk of a patrol car. Chief Bullock sent a message to Defendant Scherffius and Defendant Bentley that they would not be disciplined for insubordination or Constitutional violations.

Second Defendant Desloge was deliberately indifferent to the rights of others in adopting the supervision, discipline and control policies and said actions reflect a conscious choice by Defendant Desloge. Chief James Bullock stated on more than one occasion that he did not give

24

Defendant Scherffius and Defendant Bentley harsher discipline, because it was his "personal decision".

Last, the deficiency in Defendant Desloge's supervision, discipline and control policies caused Plaintiffs' injuries. Defendant Desloge's discipline, and lack of discipline, impliedly encouraged Defendant Scherffius and Defendant Bentley to "push the envelope" without fear of repercussions.

For the foregoing reasons, Plaintiff has presented a *prima facie* case of municipal liability against Defendant Desloge based on her claim of failure to supervise discipline and control. Having presented such evidence, Plaintiff respectfully requests this Honorable Court to deny Defendant Desloge's Motion for Summary Judgment on Count II of Plaintiff's First Amended Complaint.

### C.     Plaintiff has presented a *prima facie* case of illegal seizure of Plaintiff's dog by Defendant Scherffius.

### (COUNT III OF PLAINTIFF'S FIRST AMENDED COMPLAINT)

Defendant Scherffius moves this Court to grant his motion for summary judgment on Plaintiff's claim of unreasonable seizure in the shooting of Plaintiff's dog on the basis that Defendant Scherffius shot in self-defense and he is entitled to qualified immunity. (*See* Def. Memo. in Support, pp. 7-8).

Plaintiff has alleged that Defendant Scherffius' shooting and killing her dog "Stormy" constituted an unreasonable seizure. Unreasonable seizures are protected under the Fourth Amendment. Graham, 490 U.S. at 395. Defendant Scherffius' shooting of Plaintiff's dog constituted a seizure. Lesher v. Reed, 12 F.3d 148, 150-51 (8th Cir. 1994); *see also* Altman v. City of High Point, N.C., 330 F.3d 194, 204-05 (4th Cir. 2003); Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994) (*overruled on other grounds by* Robison v. Solano County, 278 F.3d 1007, 1013 (9th Cir. 2002)).

The question becomes whether the seizure was reasonable under the circumstances. Andrews v. City of West Branch, Iowa, 454 F.3d 914, 918 (8th Cir. 2006); United States v. Place, 462 U.S. 696, 703 (1983).

The Andrews court recognized that, "Other circuits have held that an officer commits an unreasonable, warrantless seizure of property, in violation of the Constitution, when he shoots and kills an individual's family pet when that pet presented no danger and when non-lethal methods of capture would have been successful." Id. (citing Brown v. Muhlenberg Twp., 269 F.3d 205, 210 (3rd Cir. 2001) and Fuller, 36 F.3d at 68). To determine whether Defendant Scherffius' shooting of Plaintiff's dog was reasonable, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (*citation and internal quotation marks omitted*). A seizure is unlawful when it is "more intrusive than necessary." Florida v. Royer, 460 U.S. 491, 504, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

Here, the intrusion was severe as Plaintiff's dog was shot and killed. Defendant Scherffius' own testimony, along with the video from his police car, refutes his argument that he shot in self-defense, and the dogs were attacking him and threatened his safety. (*See* Material Fact Nos. 11 and 13). Particularly, Defendant Scherffius admits that Plaintiff's dogs were close enough to bite him, but didn't. (*See* Material Fact No. 30). Plaintiff denies that she gave any verbal commands to her dogs to attack Defendant Scherffius and called the dogs to come to her as they followed Defendant Scherffius in the front yard. (*See* Material Fact No. 29 and Plaintiff's Affidavit – Ex. C, ¶ 8). Defendant Scherffius further testified that he did not use his OC spray (pepper spray). (*See* Material Fact No. 10). In viewing the facts in the light most favorable to Plaintiff, Defendant Scherffius' seizure of Plaintiff's dog by shooting it was unreasonable.

26

Defendant Scherffius argues that qualified immunity protects him because he believed the dogs presented a danger to him and non-lethal methods of controlling Plaintiff's dog would not succeed. Defendant Scherffius must show that "a reasonable officer with the information he possessed at the time of the shooting could have believed that his conduct was lawful in light of the law that was clearly established on the date of the incident." Andrews, 454 F.3d at 918-19 (*citing* Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

The 9th Circuit in 2005 addressed qualified immunity in a dog killing case and held:

> "Prior to the events at issue in this case, we had held that unnecessary destruction of property in the course of executing a warrant is unconstitutional. Liston, 120 F.3d [965] at 979. We also had held that the killing of a person's dog constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest. See Fuller, 36 F.3d at 68; Brown v. Muhlenberg Twp., 269 F.3d 205, 211-12 (3d Cir. 2001); Lesher v. Reed, 12 F.3d 148, 150-51 (8th Cir. 1994). We also had recognized that in assessing reasonableness under the Fourth Amendment an appropriate factor is whether the officer considered alternatives before undertaking intrusive activity implicating constitutional concerns. See Chew v. Gates, 27 F.3d 1432, 1440 n.5 (9th Cir. 1994); Gutierrez v. City of San Antonio, 139 F.3d 441, 450 (5th Cir. 1998). These cases should have alerted any reasonable officer that the Fourth Amendment forbids the killing of a person's dog, or the destruction of a person's property, when that destruction is unnecessary — i.e., when less intrusive, or less destructive, alternatives exist. A reasonable officer should have known that to create a plan to enter the perimeter of a person's property, knowing all the while about the presence of dogs on the property, without considering a method for subduing the dogs besides killing them, would violate the Fourth Amendment."

San Jose Charter of Hells Angels v. San Jose, 402 F.3d 962, 977-78 (9th Cir. 2005).

Defendant Scherffius knew there was at least one dog at Plaintiff's residence as he examined feces in Plaintiff's yard. (*See* Material Fact No. 22). Additionally, you can hear Plaintiff's dogs barking on the video from Defendant Scherffius' patrol car after Defendant Scherffius knocked on Plaintiff's door. A reasonable officer would have used OC spray on the dogs, or even a more reasonable alternative, would have simply jumped over the fence in Plaintiff's front yard. If the facts asserted by Plaintiff are found to be true, and if Defendant Scherffius had violated Plaintiff's Fourth

27

Amendment right against unreasonable seizure, Defendant Scherffius could not have concluded that he could lawfully destroy a pet who posed no imminent danger or he could lawfully destroy a pet in lieu of spraying the dogs with OC spray or simply jumping over Plaintiff's fence.

For the foregoing reasons, Plaintiff has presented a *prima facie* case of unreasonable seizure of Plaintiff's dog by Defendant Scherffius. Having presented such evidence, Plaintiff respectfully requests this Honorable Court to deny Defendants Scherffius, Bentley and Gerstenschlager's Motion for Summary Judgment on Count III of Plaintiff's First Amended Complaint.

**D.    Plaintiff has presented a *prima facie* case of state law claims of assault and battery against Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager.**

**(COUNT V OF PLAINTIFF'S FIRST AMENDED COMPLAINT)**

Defendants Scherffius, Bentley and Gerstenschlager move this Court to grant their motion for summary judgment on Plaintiff's state law claims of assault and battery on the basis that Missouri's Statute of Limitations bars the claims and sovereign immunity applies regardless. (*See* Def. Memo. in Support, pp. 6-9).

Although R.S.Mo. § 516.140 provides a two year limitation on an assault and battery claim, it does not apply in this case.

In <u>Foster v. Armontrout</u>, the court, in addressing R.S.Mo. § 516.130, held:

"Section 516.130(1) of the Missouri Statutes provides a three-year limitations period for [a]n action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty ***. Mo.Ann.Stat. Sec. 516.130(1) (Vernon 1952). **The statute applies not only to tort actions, but to any action against a sheriff, coroner or other officer acting in his or her official capacity**." (*emphasis added*).

<u>Foster v. Armontrout</u>, 729 F.2d 583, 585 (8th Cir. 1984).

Because Count V consists of state law assault and battery claims against officers who were acting in their official capacity, the three-year limitations set forth in  R.S.Mo. § 516.130 apply. The incident subject to this case occurred on September 25, 2004 and this case was filed on September 20, 2007, within the three-year statute of limitations. (*See* Material Fact Nos. 1 and 2).

Defendants Scherffius, Bentley and Gerstenschlager next claim official immunity for the performance of discretionary duties. Discretionary acts admittedly, including a decision to affect an arrest, are generally protected by official immunity. Nevertheless, official immunity does not apply to discretionary acts done in bad faith or with malice. Blue v. Harrah's North Kansas City, 170 S.W.3d 466, 479 (Mo. App. 2005). The Blue court, quoting State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 447 (Mo. 1986), defined those terms as follows:

> "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others...
>
> Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

Id.

Plaintiff suggests Defendants Scherffius, Bentley and Gerstenschlager's actions against Plaintiff at the Desloge Police Department were intended to be prejudicial or injurious, had a dishonest purpose, showed moral obliquity, demonstrated conscious wrongdoing, and breached a known duty through an ulterior motive. Official immunity is inapplicable to this situation.

29

Lastly, after reviewing Defendant Desloge's applicable insurance policy, Plaintiff agrees that sovereign immunity applies to the City of Desloge on this state law claim of *respondeat superior* and therefore abandons said claim.

For the foregoing reasons, Plaintiff has presented a *prima facie* case of state law claims of assault and battery against Defendant Scherffius, Defendant Bentley and Defendant Gerstenschlager. Having presented such evidence, Plaintiff respectfully requests this Honorable Court to deny Defendants Scherffius, Bentley and Gerstenschlager's Motion for Summary Judgment on Count V of Plaintiff's First Amended Complaint.

## VI.     <u>CONCLUSION</u>

Based upon the foregoing facts and the foregoing reasons, Plaintiff has established a *prima facie* case of excessive force and assault and battery claims against Defendants Scherffius, Bentley and Gerstenschlager a *prima facie* case of illegal against Defendant Scherffius and a *prima facie* case  of municipal liability against Defendant Desloge and this court should deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

SCHOTTEL & ASSOCIATES, P.C.

BY: s/*James W. Schottel, Jr.*
      James W. Schottel, Jr.
      Attorney Bar No. 94480
      1221 Locust St., Fl 8
      St. Louis, MO 63103
      (314) 421-0350
      (314) 421-4060 facsimile
      jwsj@schotteljustice.com

      Attorney for Plaintiff
      Jean Gaulden

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>February 23, 2009</u>, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Mark H. Zoole
zoole@sbcglobal.net

Attorney for Defendants
City of Desloge, Missouri
Brandon Scherffius
Nathan Bentley
Gary Gerstenschlager

/s/ *James W. Schottel, Jr.*