UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEAN GAULDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV01637 ERW |
| | ) | |
| CITY OF DESLOGE, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment [doc. #50].[1]

I. **PROCEDURAL BACKGROUND**

On September 20, 2007, Plaintiff Jean Gaulden ("Plaintiff") filed a lawsuit against the City of Desloge, Missouri; St. Francois County, Missouri; Brandon Scherffius; Nathan Bentley; Gary Gerstenschlager; and John Doe. The lawsuit arose out of the September 25, 2004 arrest of Plaintiff. She filed her First Amended Complaint on December 8, 2008, asserting five counts: I) violation of civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment, due to the use of excessive and unreasonable force against Plaintiff by Defendant Scherffius, Defendant Bentley,

---

[1]Defendants' Motion for Summary Judgment [doc. #50] was filed by Attorney Mark Zoole on behalf of Defendants City of Desloge, Brandon Scherffius, Nathan Bentley, St. Francois County, and Gary Gerstenschlager. Subsequent to the filing of this Motion, Mr. Zoole filed a Request to Withdraw as Counsel for Defendant Nathan Bentley [doc. #68], which this Court granted on February 24, 2009 [doc. #75]. As a result of Mr. Zoole's withdrawal, on April 2, 2009, this Court ordered Defendant Bentley to notify the Court as to whether he wished to join in Defendants' Motion for Summary Judgment. On April 7, 2009, this Court received correspondence from Defendant Bentley which confirmed that he did want to join in the pending Motion [doc. #88].

Defendant Gerstenschlager, and Defendant Doe, in their individual capacities; II) violation of civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment against Defendant City of Deslodge, Missouri and Defendant St. Francois County, Missouri; III) violation of civil rights under 42 U.S.C. § 1983 and the Fourth Amendment, due to unreasonable seizure, against Defendant Scherffius, in his individual capacity; IV) respondeat superior liability for violation of civil rights under 42 U.S.C. § 1983 against Defendant City of Deslodge, Missouri and Defendant St. Francois County, Missouri; and V) supplemental state law claims of assault and battery against all Defendants. This Court granted Defendants' Motion to Dismiss Count IV of Plaintiff's First Amendment Complaint on February 6, 2009 [doc. #54]. Additionally, on Plaintiff's motion, this Court dismissed all claims against Defendant John Doe and Defendant St. Francois County, Missouri [Feb. 17, 2009 Docket Text Order]. Thus, the remaining Defendants at this point in the case are the City of Deslodge, Missouri, Brandon Scherffius, Nathan Bentley, and Gary Gerstenschlager (collectively, "Defendants") and the remaining counts against them are Counts I, II, III and V. Defendants filed the pending Motion for Summary Judgment [doc. #50] on January 28, 2009.

## II.    BACKGROUND FACTS[2]

_____

[2]The Court's recitation of the facts is taken from Defendants' Statement of Uncontroverted Material Facts [doc. #51]; Plaintiff's Statement of Material Facts in Which a Genuine Issue Exists and Plaintiff's Additional Undisputed Material Facts [doc. #61]; Plaintiff's Supplemental Undisputed Facts [doc. #73]; Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment [doc. #76]; and Plaintiff's Second Supplemental Undisputed Material Facts [doc. #86]. The Court also considered the Affidavit of Jean Gaulden [doc. #61-4]; the Deposition of Brandon Scherffius [doc. #61-3]; the Deposition of Nathan Bentley [doc. #86-2]; the Mineral Area Regional Medical Center records [doc. #50-2]; the St. Francois County Ambulance District records [doc. #61-7]; and photos taken by John Gaulden [doc. #61-5]

On September 25, 2004,[3] Defendant Brandon Scherffius arrived at an address near Plaintiff's residence, in order to speak to Jason Adams and his girlfriend, Kathleen. Mr. Adams told Defendant Scherffius that someone had placed feces in the seat of his truck. Defendant Scherffius looked in the truck and observed that there was indeed feces on the seat. Defendant Scherffius also noticed that there was feces in Plaintiff's yard that appeared to be similar to the feces that had been placed in Mr. Adams' truck, so Defendant Scherffius went to the front door of Plaintiff's residence. When Plaintiff answered the door, Defendant Scherffius instructed her to come outside of her home to speak with him. When asked why he wanted to speak with her, Defendant Scherffius stated that he would explain if she stepped outside.

The events that followed are heavily disputed and the affidavit of Plaintiff and the deposition testimony of Defendant Scherffius demonstrate the conflict. Plaintiff states that Defendant Scherffius grabbed her arm and pulled her from the front doorway of her home and on to the front porch. She also asserts that he grabbed her arm a second time while she was on the front porch. Defendant Scherffius, however, states that he did not grab Plaintiff's arm and pull her out of her house, rather, he claims that Plaintiff began cursing at him and violently slammed the door shut after exiting.

There is also a dispute regarding Plaintiff's two German Shepherd dogs. Plaintiff states that while Defendant Scherffius was pulling her out of her house, her dogs came out of the front door and that she never gave any verbal commands to her dogs to attack or harm Defendant

---

[3]In Plaintiff's Additional Undisputed Material Facts [doc. #61], Plaintiff states, "Defendant Scherffius arrived at the scene near Plaintiff's residence on *September 28, 2004*." (emphasis added). This appears to be an error, as all other references to the date of the alleged abuse and Plaintiff's arrest are to September 25, 2004.

Scherffius.  She further states that, once the dogs came outside, Defendant Scherffius walked down the front steps and the dogs followed, trotting or jumping next to him as he backed away. Defendant Scherffius, on the other hand, states that Plaintiff commanded her dogs to attack and they came running out of the house toward him, and they chased him and were attacking him. The parties agree that Plaintiff's dogs were close enough to bite Defendant Scherffius, but they did not actually bite him.

The parties agree that Defendant Scherffius fired his gun at the dogs and hit one of them, Stormy (who eventually died), but they disagree as to the necessity of the shooting.  Plaintiff avers that the dogs had stopped trotting and jumping next to Defendant Scherffius and that he was several feet from the dogs when he fired the gun.  She also states that the Desloge Police Department issued pepper spray to Defendant Scherffius, but that he opted to use the gun instead of the pepper spray.[4]  Defendant Scherffius, however, states that he ran away from the dogs until he could run no further, and that he perceived the dogs as a threat to his safety and saw no alternative means of protecting himself from them other than shooting.

After the shots were fired, Plaintiff was arrested by Defendant Scherffius, although there is another dispute regarding the circumstances of the arrest.  Plaintiff states that she did not struggle with Defendant Scherffius, as she was in fear after he had shot at her dogs.  She states that he jumped on her and placed her in handcuffs on the front porch, causing scrapes on and pain to her knees.  Defendant Scherffius states that he tried to place Plaintiff under arrest, but she physically

---

[4]The Court notes that it is unclear whether Defendant Scherffius was actually carrying the pepper spray on the day in question.

resisted via both flight and struggling. He avers that he used only the amount of force that was reasonably necessary to complete the arrest.[5]

After Defendant Scherffius had placed Plaintiff under arrest, Defendants Bentley and Gerstenschlager arrived at Plaintiff's residence. Plaintiff was escorted to Defendant Scherffius's patrol car and Defendant Scherffius drove her to the Desloge Police Department. Defendants Bentley and Gerstenschlager also went to the Police Department. After they all arrived at the Police Department, the events that unfolded again become highly disputed. Plaintiff states that she was handcuffed with her hands behind her back and Defendant Scherffius placed her in a holding cell, with the door left open. She states that Defendant Bentley grabbed her by her shirt, pulled her out of the holding cell and kneed her in the stomach, causing her to fall to the ground before he lifted her back up to her feet. During this time, Plaintiff states that Defendants Scherffius and Gerstenschlager were watching and laughing. She further states that Defendant Scherffius then punched her in the chest, causing her to fall backward onto the floor, where she eventually rolled onto her stomach because she was having trouble breathing. She goes on to state that while she was on her stomach, Defendants Scherffius, Bentley and Gerstenschlager hit her in the back of her legs with their batons, and Defendant Scherffius kicked her in her side.

--------

[5]The Court notes that all of the aforementioned disputed events (the initial contact, interaction with the dogs, and arrest of Plaintiff) are recorded on the video made by the mounted camera on Defendant Scherffius's police vehicle. Both parties cite to the video to support the material facts that they set forth in their briefs. Defendants rely heavily on the video in their Reply Brief, stating several times that "[t]he recording speaks for itself" or "the recording shows what happened." The Court disagrees with this characterization of the video recording. The events at issue in this case are barely visible on the screen and there is no audio throughout most of the pertinent parts. Upon viewing the recording, both the Plaintiff's and Defendants' interpretation of the events depicted in the recording seem entirely plausible.

During this time, they were cursing at her continuously. She states that she was pulled back up to her feet, at which point she lost consciousness.

Defendants, on the other hand, state that Defendants Bentley and Gerstenschlager used no force on Plaintiff and that Defendant Scherffius only used reasonable force during the arrest at Plaintiff's home, and not at the Police Department. According to Defendant Gerstenschlager, he informed Plaintiff at the Desloge Police Department that he was transporting her to the county jail and then he saw her lying on the floor, but he didn't actually witness her faint. According to Defendant Scherffius, he saw Defendant Gerstenschlager talking to Plaintiff at the Police Department while she was in a holding cell and he knew that she fainted, but he did not remember seeing her faint and didn't recall: if the holding cell was closed and locked; if Plaintiff was in the holding cell when she fainted; if he physically made contact with Plaintiff to lower her to the floor; or where Defendant Gerstenschlager was when Plaintiff fainted. According to Chief of Police James Bullock, he saw Plaintiff lying on the floor outside the holding cell, but didn't see how she got to the floor. According to Defendant Bentley, he was present at the Desloge Police Department, but he did not remember: if there were any other police officers there or if Chief Bullock was there when he arrived; if the other officers and Chief Bullock arrived after he was present; if Defendant Gerstenschlager was there; if anyone lowered Plaintiff to the floor; if Plaintiff fainted; if he spoke to Plaintiff at the Police Department; if he called the EMT; where he was when the EMT provided treatment to Plaintiff; if he spoke to the EMT; how long he was at the Police Department before the EMT arrived; or if he saw Plaintiff in the holding cell.

The St. Francois County Ambulance District was called to the Desloge Police Department to attend to Plaintiff. Robert McFarland, an EMT, responded to the call and treated Plaintiff. Mr.

McFarland stated that an unidentified police officer told him that Plaintiff was being walked out to a police car for transport to the county jail when she passed out. He also observed that Plaintiff had dried blood on her hands. The St. Francois County Ambulance District records state that when Plaintiff began to wake up, she wanted to know what was going on because she couldn't remember what had happened. The records also state that Plaintiff complained of pain to her lower leg and her abdomen, where she claimed to have been kicked by the police. The records also stated that there were no obvious signs of injury to Plaintiff's abdomen and that there was a very superficial scrape on her lower right leg.

Plaintiff and Defendants have different opinions regarding the severity of the injuries suffered by Plaintiff, although both cite to the Mineral Area Regional Medical Center records to support their argument. These records reflect that, while at the hospital, Plaintiff complained of leg, knee, and abdominal pain, as a result of being kneed in the stomach and kicked by a police officer. The records noted that abrasions were observed on Plaintiff's right knee and left shin, but no mention is made of abdominal injuries, outside of Plaintiff's complaint of pain. There is nothing in the Medical Center records regarding pain or injury to the back of Plaintiff's legs, but Plaintiff submitted photos taken on September 25, 2004, depicting large bruises on the back of Plaintiff's upper legs.[6] Plaintiff also asserts that, as a result of the incident, she suffered mental

---

[6]Defendants contest the admissibility of the photographs of Plaintiff's legs, arguing that "[n]othing competently establishes any foundation for the purported photographs, including [the] date and identity of the subject in them, much less when the condition depicted in them was first caused, or by what means." (Defs. Reply Brief, doc. #76, pg. 6). However, Defendants fail to account for the signed and sworn affidavit of John Gaulden that was submitted with the photographs. "In order to be admissible, a photograph must be shown to be an accurate representation of the thing depicted as it appeared at the relevant time." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 569 (8th Cir. 2009) (citing *United States v. Stierwalt*, 16 F.3d 282, 286 (8th Cir. 1994)). Mr. Gaulden has made a sworn statement regarding when the photographs were

and emotional injuries that required treatment by medical professionals. Defendants, however, dispute the necessity of the treatment and deny any connection between their conduct and Plaintiff's alleged mental and emotional injuries.

The parties disagree regarding whether Plaintiff had been drinking alcohol on the day of the incident in question. Defendants point to the Mineral Area Regional Medical Center records, which provide that Plaintiff's Specimen Report found "118 MG/DL of alcohol, ethanol." The records also note in several places that Plaintiff smelled of alcohol. Defendants also cite to the St. Francois County Ambulance District records, which state that there was a strong smell of alcohol on Plaintiff's breath. Plaintiff, however, denies that she was drinking, but offers no alternative explanation for the alcohol smell or the presence of alcohol in her blood on the day of the incident.

As of September 25, 2004, Defendants Gerstenschlager, Bentley, and Scherffius had all completed full academy training as law enforcement officers, and maintained all continuing law enforcement education training sessions consistent with their certification requirements as Missouri law enforcement officers. There is no evidence that, as of September 25, 2004, there was any pattern or practice of excessive force by St. Francois County deputies or by Desloge police officers.

Chief James Bullock of the Desloge Police Department makes policies and procedures for Desloge police officers to follow. Neither Defendant Scherffius, nor Defendant Bentley, nor

---

taken and who appears in the photographs, and stating that they are accurate copies. This is sufficient to prove admissibility. Defendants' additional arguments regarding the veracity of the pictures and contradictions to the hospital records are credibility and factual issues that are to be left for the finder of fact, and which are not to be addressed by the Court at this stage in the proceedings.

Defendant Gerstenschlager have ever made, or been empowered to make, policy decisions for the Desloge Police Department.  At the time of the incident in this case, there existed a Desloge Police Department Manual, which was adopted by the City of Desloge Board of Aldermen.  Defendants Scherffius and Bentley were given copies of the Manual when they were hired as police officers for the City of Desloge.  The Manual provides that the Chief of Police has the authority to make rules and policies without the approval of the Board of Aldermen.  The Manual also sets forth disciplinary procedures and actions governing Desloge police officers.  The Manual in effect at the time of the events in question provided that the following disciplinary actions could be taken: (A) oral reprimand; (B) written reprimand; (C) demerits; (D) suspension without pay; (E) demotion; (F) dismissal; (G) criminal prosecution.

On December 15, 2003, Defendant Scherffius was issued a letter of reprimand for inattention to duty for failing to turn in daily activity logs.  The letter warned that any further violations of that nature would force Chief James Bullock to go to the next step on the disciplinary scale (the disciplinary actions listed in the Desloge Police Department Manual).  On January 5, 2004, Defendant Scherffius was issued another letter of reprimand for inattention to duty for failing to turn in daily activity logs.  The letter placed Defendant Scherffius on probation for six months beginning January 8, 2004, and warned that any further violations of that nature would force Chief Bullock to go to the next step in the disciplinary scale.  Probation is not listed as a disciplinary action in the Desloge Police Department Manual.  On April 8, 2004, Defendant Scherffius was issued a letter of reprimand regarding the cleanliness of his car, particularly that the trunk of the vehicle contained evidence that had been left there for awhile.  Although Defendant Scherffius was on probation at the time this letter was written, Chief Bullock only gave

Defendant Scherffius a written reprimand. When asked to explain this decision, Chief Bullock stated that it was his personal choice. He also stated that, in his opinion, leaving evidence in the trunk would be a serious violation if the case were to go to trial. On January 3, 2005, Defendant Scherffius was issued another written reprimand regarding the cleanliness of his car and failure to properly handle, care for, and dispose of evidence in a proper manner, particularly, Chief Bullock found a bottle half full of vodka in the trunk. Although the written reprimand was for actions by Defendant Scherffius regarding evidence that were similar to the actions relating to the April 8, 2004 letter of reprimand, Chief Bullock only gave Defendant Scherffius another written reprimand, explaining that it was his personal decision to do so. On February 22, 2005, Defendant Scherffius was issued a letter of reprimand for failing to appear in court after being issued subpoenas to do so. Chief Bullock stated that there was "no decision" in only issuing a written reprimand, and not a more severe disciplinary action for the incident. On May 25, 2005, Defendant Scherffius was issued a written warning for failing to serve and enforce complaints and ordinance violations. The written warning stated that any further violation would result in the next step on the disciplinary scale. On February 9, 2006, Defendant Scherffius was issued a written warning for failing to follow a direct order and failure to complete an assigned task or duty relating to fingerprint cards. The written warning stated that any future failure to follow a direct order or failure to complete an assigned task or duty would result in the next step on the disciplinary scale. On February 9, 2006, Defendant Scherffius was issued another written warning for failing to submit reports in a timely manner and failure to carry out a direct order. This second February 9, 2006 written warning stated that any future failure to submit reports in a timely manner or failure to carry out a direct order would result in the next step on the disciplinary scale.

On April 12, 2003, Defendant Bentley was issued a written warning for failing to submit reports in a timely manner. The written warning stated that any future failure to submit reports in a timely manner would result in the next step on the disciplinary scale. On April 18, 2003, Defendant Bentley was issued another written warning for failing to submit a report in a timely manner. The written warning stated that any future failure to submit reports in a timely manner would result in a written reprimand. On July 12, 2003, Defendant Bentley was issued a written warning for failing to submit reports in a timely manner. The written warning stated that any future failure to submit reports in a timely manner would result in harsher disciplinary action. On August 1, 2003, Defendant Bentley was suspended two days without pay for lying to Chief Bullock. In making the decision to suspend Defendant Bentley, Chief Bullock stated that he did not take into consideration any prior written warnings or reprimands issued to Defendant Bentley. On December 15, 2003, Defendant Bentley was issued a letter of reprimand for inattention to duty for failing to turn in daily activity logs. The letter of reprimand warned that any further violations of that nature would force Chief Bullock to go to the next step in the disciplinary scale. Despite Defendant Bentley's history of receiving written reprimands for failing to turn in reports, Chief Bullock only issued another written reprimand on December 15, 2003. When asked why he didn't issue more severe punishment, Chief Bullock stated that it was his personal decision. On February 11, 2004, Defendant Bentley was suspended five days without pay for misinforming Chief Bullock. In making the decision to suspend Defendant Bentley, Chief Bullock stated that he did not take into consideration any of the prior incidents involving Defendant Bentley. On April 8, 2004, Defendant Bentley was issued a letter of reprimand regarding the cleanliness of his car, particularly, the truck of the vehicle contained evidence that had been left there for a while. On

January 3, 2005, Defendant Bentley was issued another letter of reprimand regarding the cleanliness of his car and failure to properly handle, care for, and dispose of evidence in a proper manner, particularly, Chief Bullock found a bottle half full of vodka in the trunk. Although the January 3, 2005 written reprimand was for actions by Defendant Bentley regarding evidence that were similar to the actions relating to the April 8, 2004 letter of reprimand, Chief Bullock only gave Defendant Bentley another written reprimand, stating that it was his personal decision.

Batons are kept at the Desloge Police Department, in an equipment room. The Police Department provides a police officer with a baton when the officer is hired, if that officer elects to carry a baton. Both Defendants Scherffius and Bentley carried batons while on duty as a Desloge Police Department police officer. Defendant Bentley was carrying his baton on September 25, 2004; Defendant Scherffius did not recall if he was carrying his baton when he went to Plaintiff's house on that date. No one with the Desloge Police Department provided any training regarding the use of batons to either Defendant Scherffius or Defendant Bentley, however, officers were required to undergo baton certification training at the police academy. The Desloge Police Department Manual provides no written policies or procedures regarding the use of the baton, but the Manual does forbid excessive or unreasonable force with any weapon. The Desloge Police Department provides its police officers with a gun when they are hired and trains its police officers on the use of a gun at the Desloge firing range.

III.    **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts

13

showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV. DISCUSSION

### A. EXCESSIVE FORCE CIVIL RIGHTS CLAIM AGAINST DEFENDANTS SCHERFFIUS, BENTLEY, AND GERSTENSCHLAGER, AS INDIVIDUALS (COUNT I)

In Count I of her First Amended Complaint, Plaintiff alleges that Defendants Scherffius, Bentley, and Gerstenschlager used excessive and unreasonable force against her. In her Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff clarifies that she "asserts her claim of excessive force against the Defendants on the events that occurred at Desloge Police Department."

14

The Eighth Circuit has established that excessive force claims which arise during the "legal twilight zone" between arrest and sentencing should be analyzed under the Fourth Amendment standards that apply during the act of the arrest. *Wilson v. Spain*, 209 F.3d 713, 715-16 (8th Cir. 2000) (citing *Moore v. Novak*, 146 F.3d 531, 535 (8th Cir. 1998)). Fourth Amendment excessive force claims are analyzed "under a reasonableness standard to determine whether, in light of the facts and circumstances, the officer's actions were objectively reasonable." *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotations and citations omitted). The Court must consider factors such as the severity of the suspected crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting or attempting to evade arrest. *Id.* Further, the determination of reasonableness must allow for the fact that "police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain, and rapidly evolving- about the amount of force that is necessary in a particular situation." *Gill*, 546 F.3d at 562 (citing *Graham*, 490 U.S. at 396-97).

This inquiry is objective, questioning "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

The Court finds that a genuine issue of material fact exists with respect to Plaintiff's claim of excessive use of force. Without considering the credibility of the witnesses or the truth of any

factual issue, this Court cannot determine whether Defendants Scherffius, Bentley, and Gerstenschlager actually engaged in the physical abuse alleged by Plaintiff, and whether any force that was used was reasonable under the circumstances. Plaintiff states in her sworn affidavit that the alleged abuse did take place at the Desloge Police Department on September 25, 2004, while Defendants each state in their sworn affidavits that no such abuse ever took place. Because there is the existence of this factual dispute regarding whether any abuse took place, this Court is unable to determine whether the officers used excessive or unreasonable force at this stage in the proceedings.

Defendants argue that Plaintiff's excessive force claim must fail because she suffered no significant physical injury as a result of the alleged physical abuse. Although "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury, a de minimus use of force or injury is insufficient to support a finding of a constitutional violation." *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003) (alteration in original; internal citations and quotations omitted). Another factual dispute exists regarding the severity of the injuries suffered by Plaintiff. The Mineral Area Regional Medical Center Records clearly establish that Plaintiff had abrasions on her legs and was complaining of abdominal pain, with no clear abdominal injury. However, Plaintiff additionally claims to have suffered large bruises on the back of her legs and mental and emotional injuries. Defendants, for their part, dispute the existence of any bruises and contest the veracity of the photographs depicting the bruises. They also dispute the existence and severity of any mental and emotional injuries caused by Defendants Scherffius, Bentley, and Gerstenschlager. Without resolving these factual issues, the Court

cannot come to a conclusion regarding whether Plaintiff's injuries are sufficient to support an excessive force claim.

Defendants additionally argue that Defendants Scherffius, Bentley, and Gerstenschlager are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Prior to the United States Supreme Court's ruling in *Pearson*, courts "employ[ed] a two-step process when considering an officer's claim of qualified immunity." *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008). The first inquiry was "whether the officer's conduct violated a constitutional right." *Id.* If so, the second inquiry was "whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Vaughn v. Greene Co.*, 438 F.3d 845, 850 (8th Cir. 2006). *Pearson*, however, established that a court considering whether qualified immunity applies may determine whether there was a violation of clearly established law "before turning to the more difficult question[,] whether the relevant facts make out a constitutional question at all." *Pearson*, 129 S. Ct. at 818-22.

Although the issue of qualified immunity is commonly resolved on summary judgment, "[t]his does not mean . . . that courts may always decide questions of qualified immunity on summary judgment." *Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993). In *Arnott*, a wrongful arrest case, the Eighth Circuit upheld the lower court's decision to deny the officer's motion for summary judgment, based on qualified immunity. The Eighth Circuit found that

17

> [i]f the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law.

*Id.* (citing *Gainor v. Rogers*, 973 F.2d 1379, 1384-85 (8th Cir. 1992)). Although *Arnott* deals specifically with a factual dispute over the plaintiff's conduct at the time of his arrest, the same principles should apply when there is a factual dispute over the conduct of defendant police officers. In this case, Plaintiff has set forth a set of facts directly contradicting the facts alleged by Defendants. Under Plaintiff's set of facts, it is possible that Defendant Scherffius, Defendant Bentley, or Defendant Gerstenschlager, or any combination of these three officers, engaged in conduct which violated a clearly established constitutional or statutory right of which a reasonable person would have known. Thus, the issue of qualified immunity cannot be resolved on summary judgment.

In sum, genuine issues of material fact exist with respect to Plaintiff's claim of excessive use of force. As a result, Defendants' Motion for Summary Judgment on Count I of Plaintiff's First Amended Complaint must be denied.

**B.  CIVIL RIGHTS CLAIM AGAINST DEFENDANT CITY OF DESLOGE, MISSOURI (COUNT II)**

In Count II of her First Amended Complaint, Plaintiff sets forth three alternative bases of liability against Defendant City of Desloge, Missouri: delegation of authority; failure to train, supervise, and control; and pattern of transgressions. However, in her Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff states that she has abandoned

her claims of delegation of authority and pattern of transgressions, leaving only her failure to train, supervise, and control claim as Plaintiff's basis for liability against Defendant City of Desloge. Specifically, Plaintiff asserts that Defendant City of Desloge failed to properly train its officers on the use of the baton and, separately, that Defendant City of Desloge failed to properly supervise, discipline and control its officers.

Municipalities cannot be liable "under § 1983 on a respondent superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, liability can exist where a "policy or custom is the moving force behind a constitutional violation" or where training procedures or officer supervision is inadequate. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991); *Larkin v. St. Louis Housing Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004).

1. *Failure to Properly Train*

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). In order to establish deliberate indifference, the plaintiff must demonstrate that the municipality "'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'" *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (quoting *Thelma D. by Dolores A. v. Bd. of Educ.*, 934 F.2d 929, 934 (8th Cir. 1991)). The plaintiff may demonstrate notice in two different ways: (1) "show that the failure to train employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious," or (2) show that "a pattern of misconduct indicates that the [municipality's] responses to a regularly recurring

situation are insufficient to protect the [citizens'] constitutional rights." *S.J. v. Kansas City Mo. Pub. Sch. Dist.*, 294 F.3d 1025, 1029 (8th Cir. 2002).

In this case, Plaintiff's failure to train claim is not based on a pattern of misconduct. Rather, she asserts that Defendant City of Desloge should have recognized the need for training its police officers on the use of the baton, in order to prevent potential violations of citizens' constitutional rights. The material facts relevant to Plaintiff's failure to train claim are not in dispute. Defendants agree that the Desloge Police Department Manual provides no written policies or procedures regarding the use of the baton and that no one with the Desloge Police Department provided any training regarding the use of batons to either Defendant Scherffius or Defendant Bentley. They point out, however, that all officers, including Defendants Scherffius and Bentley, were required to undergo baton certification training at the police academy. They also emphasize that the Manual does specifically forbid excessive or unreasonable force with *any* weapon.

Even assuming an underlying constitutional violation by any of the officer Defendants, Plaintiff has not set forth any evidence that would suggest that Defendant City of Desloge had notice that its training program was constitutionally deficient or that there was a need to provide additional training to Defendants Scherffius or Bentley on the use of the baton. Plaintiff clearly established that Defendant City of Desloge does not have a policy specifically regarding batons and does not train its officers specifically on the use of batons (outside of the training they received at the police academy). However, Plaintiff failed to establish why the lack of policies and additional training on this particular piece of equipment should have raised a red flag to Defendant City of Desloge that there was a recurring potential for constitutional violations. *See Szabla v.*

20

*City of Brooklyn Park, Minn.*, 486 F.3d 385, 393 (8th Cir. 2007) (municipality can be liable for a single violation of constitutional rights when "accompanied by a showing that the municipality failed to train its employees to handle recurring situations presenting an obvious potential for such a violation").  Defendant City of Desloge, at a minimum, had established policies that specifically prohibited the use of excessive and unreasonable force.  It was reasonable for the Defendant City to believe that this policy and any accompanying training was sufficient to prevent constitutional violations like the one alleged by Plaintiff.  It cannot be said that the need for additional training was patently obvious or that Defendant City of Desloge was deliberately indifferent.

Further, it is not clear from the facts alleged by Plaintiff that the training provided by Defendant City of Desloge was in any way inadequate or deficient.  Plaintiff focuses exclusively on the lack of policies and training specifically regarding the use of the baton, but fails to account for Defendant City of Desloge's written policy clearly prohibiting the use of excessive or unreasonable force with any weapon.  The real cornerstone of Plaintiff's complaint is that Defendants Scherffius and Bentley used their batons to engage in excessive and unreasonable force against Plaintiff, and not that they did not know how to properly use their batons.  If Plaintiff's version of the facts is true and the alleged physical abuse did take place, it appears it was not the lack of training that caused the attack, rather it was a blatant disregard for the clearly established policies of the City of Desloge.

Thus, summary judgment in favor of Defendants is proper on Plaintiff's failure to train claim under Count II of her First Amended Complaint.

2.    *Failure to Properly Supervise, Discipline, and Control*

Municipalities may be liable under 42 U.S.C. § 1983 if they fail to properly supervise an employee who causes a deprivation of constitutional rights.  *See Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).  "The standard of liability for failure to supervise is demonstrated deliberate indifference or tacit authorization of the offensive acts."  *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994).  Tacit authorization is present where a plaintiff shows "'that the official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending employees.'"  *Shorts v. Bartholomew*, 255 F.App'x 46, 54 (6th Cir. 2007) (quoting *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)) (alteration in original).  Conversely, deliberate indifference is shown where a plaintiff presents evidence "that a municipal actor disregarded a known or obvious consequence of his action [or inaction]."  *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

In this case, it is clear that Defendant City of Desloge did not tacitly authorize the alleged unconstitutional conduct.  Rather, Plaintiff asserts that Defendant City of Desloge was deliberately indifferent in its supervision, discipline, and control of its police officers.  Again, the relevant facts are not in dispute.  Defendants agree that both Defendant Scherffius and Defendant Bentley received multiple written reprimands for various types of misconduct, including failure to submit reports in a timely manner, inattention to duty, cleanliness of car, and failure to properly handle evidence.  Defendant Scherffius was also reprimanded for failure to appear in court, failure to serve and enforce complaints and ordinance violations, and failure to follow a direct order.  Defendant Bentley was also reprimanded for lying and misinforming the Chief of Police.  It is undisputed that Chief of Police James Bullock did not always punish the misconduct of

Defendants Scherffius and Bentley according to the disciplinary scale set forth in the Desloge Police Department Manual or according to the warnings he had made in previous written reprimands. However, none of the misconduct for which Defendants Scherffius or Bentley were reprimanded is similar to the unconstitutional acts alleged by Plaintiff. None of the reprimands dealt with any kind of use of force at all, let alone excessive or unreasonable force. Thus, it cannot be said that the alleged abuse of Plaintiff was a "known or obvious consequence" of Chief Bullock's inconsistent punishments. *Board of Comm'rs of Bryan County*, 520 U.S. at 410; *see also Ratliff v. City of Columbia*, 205 F.3d 1347, at *1 (8th Cir. 1999) (table) (failure to discipline claim fails where prior complaints did not involve similar unconstitutional conduct); *Walls v. Bradford*, 2008 WL 312887, at *6 (E.D. Mo. 2008) (failure to discipline claim fails where prior allegations of misconduct were not sufficiently similar to alleged unconstitutional actions). Defendant City of Desloge was not deliberately indifferent, thus, Plaintiff's failure to properly supervise, discipline and control claim fails and summary judgment is proper.

This Court finds that summary judgment is proper on Plaintiff's civil rights claim against Defendant City of Desloge (Count II of Plaintiff's Amended Complaint).

## C.    UNREASONABLE SEIZURE CIVIL RIGHTS CLAIM AGAINST DEFENDANT SCHERFFIUS, AS AN INDIVIDUAL (COUNT III)

In Count III of her First Amended Complaint, Plaintiff alleges that Defendant Scherffius violated her Fourth Amendment rights by unreasonably seizing her property, specifically her dog Stormy.

The Fourth Amendment prohibits unreasonable searches and seizures. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Eighth Circuit has clearly established that a person's pet is considered to be property for the purpose of the Fourth Amendment. *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006). "'A seizure of property occurs when there is some meaningful interference with a person's *possessory* interests in that property.'" *Id.* (quoting *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir. 1994)). Such a seizure is unconstitutional if it is unreasonable and reasonableness is "judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer." *Id.* "'When the state claims a right to make a warrantless seizure, [the court] must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interest against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* (quoting *Altman v. City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003)). The Eighth Circuit has specifically recognized that "an officer commits an unreasonable warrantless seizure of property, in violation of the Constitution, when he shoots and kills an individual's family pet when that pet presented no danger and when non-lethal methods of capture would have been successful." *Id.* (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210-11 (3d Cir. 2001); *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994)).

The Court finds that a genuine issue of material fact exists with respect to whether Plaintiff's dogs threatened the safety of Defendant Scherffius and whether there were any non-lethal alternatives available to Defendant Scherffius. Defendant Scherffius asserts that he was being attacked by Plaintiff's dogs and that he had no choice but to fire shots at them. Plaintiff, on the other hand, asserts that her dogs were merely trotting beside Defendant Scherffius, that the dogs were several feet away from him when he fired the shots, and that he had reasonable

alternative means of handling the situation. Further, although there is a video of this incident taken from Defendant Scherffius's police vehicle, the relevant events are barely visible on the screen and there is no audio during the pertinent parts. The video does not clarify what happened on the day in question, nor does it "utterly discredit[]" or "blatantly contradict[]" either of the parties' versions of the facts. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (finding that there was no genuine issue of material fact when there was a videotape that clearly discredited one party's version of the events). Because of the existence of this factual dispute, this Court is unable to determine whether Plaintiff should prevail on her unreasonable seizure claim at this stage in the proceedings.

Again, Defendant Scherffius asserts that he is entitled to qualified immunity with respect to Plaintiff's unreasonable seizure claim. As set forth above, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants assert that the law regarding the use of a weapon by a police officer to injure or kill a citizen's pet was not clearly established when Defendant Scherffius shot at Plaintiff's dogs, killing one of them. His argument appears to be based solely on the fact that the leading case on this issue, *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006), was not decided until September 1, 2006, well after the alleged events at issue took place on September 25, 2004. This argument is not persuasive. At the time of the incident in question, and for many years prior thereto, the right of a person to be free from unreasonable searches and seizures was well established. *See* U.S. Const. amend. IV; *Graham v. Connor*, 490

25

U.S. 386, 395 (1989). Further, it is well established that a dog or other pet is considered to be property subject to protection under the Fourth Amendment. *See Lesher v. Reed*, 12 F.3d 148, 150-51 (8th Cir. 1994). Thus, it is clear that the law regarding the unreasonable seizure of pets was well established at the time of the incident in question and Defendants' argument must fail.

However, this Court cannot completely resolve the issue of qualified immunity at this time. With respect to Plaintiff's unreasonable seizure claim, as with Plaintiff's excessive force claim, Plaintiff has set forth a set of facts in direct contradiction to the facts alleged by Defendants. Under this set of facts, it is possible that Defendant Scherffius engaged in conduct which violated a clearly established constitutional or statutory right of which a reasonable person would have known. Thus, the issue of qualified immunity cannot be resolved on summary judgment. *See Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993).

In sum, genuine issue of material fact exist with respect to Plaintiff's unreasonable seizure claim against Defendant Scherffius individually. As a result, the Court denies Defendant Scherffius's Motion for Summary Judgment with respect to Count III of Plaintiff's First Amended Complaint.

### D.   SUPPLEMENTAL STATE LAW CLAIMS (COUNT V)

Finally, in Court V of her First Amended Complaint, Plaintiff asserts supplemental state claims of assault and battery against Defendants Scherffius, Bentley, and Gerstenschlager, as individuals, and against Defendant City of Desloge. Defendants assert that summary judgment is proper for several reasons: 1) the statute of limitations has run; 2) sovereign immunity shields Defendant City of Desloge from liability; 3) official immunity shields the individual Defendants;

and 4) the underlying alleged force did not occur at all. In her Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff recognized that sovereign immunity applies to Defendant City of Desloge with respect to her state law claims. Therefore, Plaintiff abandoned her assault and battery claims against Defendant City of Desloge, and the state law claims only remain against Defendants Scherffius, Bentley, and Gerstenschlager.

Defendants assert that they are entitled to summary judgment on Plaintiff's state law assault and battery claims because the statute of limitations has run. They argue that the two year limitations period set forth in Mo. Rev. Stat. § 516.140 applies instead of the three year limitations period set forth in Mo. Rev. Stat. § 516.130. Section 516.130 provides that a three year statute of limitations applies to "[a]n action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty." Section 516.140, on the other hand, provides that a two year statute of limitations applies to "[a]n action for . . . assault [or] battery."

The Court finds that the two year statute of limitations set forth in Section 516.140 applies to Plaintiff's assault and battery claims against Defendants Scherffius, Bentley, and Gerstenschlager. In her First Amended Complaint, Plaintiff specifically stated that she was suing these Defendants in their individual capacities. (Pl.'s 1st Am. Complaint pg. 1). An action against an officer in his or her individual capacity does not fall within the parameters of Section 516.130. *See Miller County v. Groves*, 801 S.W.2d 777, 778-79 (Mo. Ct. App. 1991) (action brought against public official as an individual not barred by Section 516.130). Thus, Section 516.140's two year statute of limitations for actions for assault or battery applies. The events at issue in this case took place on September 25, 2004, and Plaintiff filed her initial Complaint more

than two years later, on September 20, 2007.  Thus, Plaintiff's assault and battery claims against Defendants Scherffius, Bentley, and Gerstenschlager are time-barred.

At this point, it is clear that summary judgment in favor of Defendants is appropriate on Plaintiff's assault and battery claims against all Defendants.  Thus, the Court need not consider Defendants' remaining arguments.

## V.  CONCLUSION

The Court finds that genuine issues of material fact exist with respect to Plaintiff's claim of excessive use of force against Defendants Scherffius, Bentley, and Gerstenschlager, as individuals (Count I).  The Court also finds that genuine issues of material fact exist with respect to Plaintiff's claim of unreasonable seizure against Defendant Scherffius, as an individual (Count III).  These claims remain before the Court.  However, the Court finds that summary judgment in favor of Defendants is appropriate with respect to Plaintiff's civil rights claim against Defendant City of Desloge (Count II) and Plaintiff's state law claims against all Defendants (Count V).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #50] is **GRANTED in part** and **DENIED in part**.  The Court will **DISMISS, with prejudice,** Plaintiff's Count II against Defendant City of Desloge and Plaintiff's Count V against all Defendants.  Still pending before the Court are Plaintiff's Count I claims against Defendants Scherffius, Bentley, and Gerstenschlager, as individuals, and Plaintiff's Count III claims against Defendant Scherffius, as an individual.

**IT IS FURTHER ORDERED** that Defendant Bentley, who was found to be in Civil Contempt of this Court on March 12, 2009, has successfully purged himself of this contempt by submitting to a deposition by Plaintiff's attorney. Thus, Plaintiff's Second Motion to Compel [doc. #56] is **DENIED, as moot**. However, the $100.00 sanction against Defendant Bentley ordered by this Court on January 9, 2009, remains unsatisfied.

Dated this <u>16th</u> Day of <u>April</u>, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE